No. 24-5268

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CONTINENTAL RESOURCES, INC., AND
DEVON ENERGY PRODUCTION COMPANY, L.P.,
*Intervenor-Defendants-Appellants*,

v.

POWDER RIVER BASIN RESOURCE COUNCIL AND
WESTERN WATERSHEDS PROJECT,
*Plaintiffs-Appellees*,

Appeal from the United States District Court
for the District of Columbia
in Civil Action No. 1:22-cv-02696-TSC
Hon. Tanya S. Chutkan

# MOTION TO DISMISS AND OPPOSITION TO MOTION FOR
# STAY PENDING APPEAL

SARAH STELLBERG
HANNAH GOLDBLATT
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83701
(208) 342-7024
sstellberg@advocateswest.org

*Counsel for Plaintiffs-Appellees*
*Powder River Basin Resource Council*
*and Western Watersheds Project*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.    **Parties and Amici**. An accurate list of the parties, intervenors, and *amicus* appearing before this Court are listed in the Intervenor-Defendants-Appellants' Certificate as to Parties, Rulings, and Related Cases.

B.    **Ruling Under Review**. An accurate reference to the rulings under review appears in Intervenor-Defendants-Appellants' Certificate as to Parties, Rulings, and Related Cases.

C.    **Related Cases**. An accurate statement regarding related cases appears in Intervenor-Defendants-Appellants' Certificate as to Parties, Rulings, and Related Cases.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and District of Columbia Circuit Rule 26.1, Powder River Basin Resource Council and Western Watersheds Project hereby state that neither of them has any parent companies, subsidiaries, or affiliates that have issued shares to the public and that no publicly held company has a 10% or greater ownership interest in either of them. Both are nonprofit organizations dedicated to the protection of the environment.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES .......... i

CORPORATE DISCLOSURE STATEMENT .......................................... ii

TABLE OF AUTHORITIES ................................................................ v

GLOSSARY ......................................................................................... ix

INTRODUCTION ................................................................................ 1

BACKGROUND .................................................................................. 2

ARGUMENT ........................................................................................ 5

    I.    The Court Should Dismiss This Appeal for Lack of Jurisdiction ............................................................................ 5

    II.   Appellants Have Not Complied With Federal Rule of Appellate Procedure 8 .................................................... 10

    II.   Appellants Have Not Established That They Are Entitled to a Stay ................................................................ 14

        A.   Appellants Have Not Shown Likely Success on the Merits ................................................................... 14

        B.   Appellants Have Not Shown They Are Likely to Suffer Irreparable Harm Absent a Stay ...................... 19

        C.   The Balance of Equities and Public Interest Disfavor the Stay ........................................................ 24

CONCLUSION ................................................................................... 27

CERTIFICATE OF COMPLIANCE ................................................. 28

CERTIFICATE OF SERVICE ........................................................... 29

# TABLE OF AUTHORITIES

## Cases

*American Trucking Ass'ns, Inc. v. EPA,*
   283 F.3d 355 (D.C. Cir. 2002)............................................................17

*Amoco Production Co. v. Village of Gambell,*
   480 U.S. 531 (1987) .......................................................................24

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .......................................................................16

*Baker v. Adams County/Ohio Valley School Board,*
   310 F.3d 927 (6th Cir. 2002) ..........................................................11

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) .......................................................................18

*Carson v. American Brands, Inc.,*
   450 U.S. 79 (1981) .....................................................................6, 7, 9

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006)..........................................................19

*Chemical Weapons Working Group (CWWG) v. Department of the Army,*
   101 F.3d 1360 (10th Cir. 1996).............................................11, 13, 21

*Citizens for Responsibility & Ethics in Washington v. Federal Election Commission,*
   904 F.3d 1014 (D.C. Cir. 2018)..........................................................14

*Cobell v. Norton,*
   391 F.3d 251 (D.C. Cir. 2004)..........................................................15

*Cumberland Telephone & Telegraph Co. v. Louisiana Public Service Commission,*
   260 U.S. 212 (1922). ...............................................................11, 13

*Davis v. Mineta,*
    302 F.3d 1104 (10th Cir. 2002)........................................................23

*Digital Equipment Corp. v. Desktop Direct, Inc.,*
    511 U.S. 863 (1994) ........................................................................10

*Foundation on Economic Trends v. Heckler,*
    756 F.2d 143 (D.C. Cir. 1985)........................................................26

*Fund for Animals v. Frizzell,*
    530 F.2d 982 (D.C. Cir. 1975)........................................................21

*Hanson v. District of Columbia,*
    120 F.4th 223 (D.C. Cir. 2024)......................................................21

*Hirschfeld v. Board of Elections,*
    984 F.2d 35 (2nd Cir. 1993)...........................................................11

*I.A.M. National Pension Fund Benefit Plan A v. Cooper Industries, Inc.,*
    789 F.2d 21 (D.C. Cir. 1986)........................................................ 6

*Izaak Walton League of America, Inc. v. Kimbell,*
    558 F.3d 751 (8th Cir. 2009) .........................................................20

*Laningham v. United States Navy,*
    813 F.2d 1236 (D.C. Cir. 1987)......................................................16

*League of Women Voters of United States v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016)...........................................................26

*Liberty Mutual Insurance Co. v. Wetzel,*
    424 U.S. 737 (1976) ...................................................................... 8

*Narragansett Indian Tribal Historic Preservation Office v. FERC,*
    949 F.3d 8 (D.C. Cir. 2020)...........................................................19

*National Wildlife Federation v. Burford,*
    835 F.2d 305 (D.C. Cir. 1987).................................................25, 26

*Nken v. Holder,*
  556 U.S. 418 (2009) ............................................................... 14, 19, 24

Orange County, California Airport Hotel Associates v. Shanghai
  Banking Corp. Ltd.,
  52 F.3d 821 (9th Cir. 1995) ............................................................. 10

*Park County Resource Council v. United States Department of
  Agriculture,*
  817 F.2d 609 (10th Cir. 1987) ......................................................... 22

*Riley v. Kennedy,*
  553 U.S. 406 (2008) ....................................................................... 5

*Salazar ex rel. Salazar v. District of Columbia,*
  671 F.3d 1258 (D.C. Cir. 2012) .................................................... 6, 10

*Schultz v. Alabama,*
  42 F.4th 1298 (11th Cir. 2022) ..................................................... 7, 8

*SEC v. Dunlap,*
  253 F.3d 768 (4th Cir. 2001) ........................................................... 11

*Shee Atika v. Sealaska Corp.,*
  39 F.3d 247 (9th Cir. 1994) .............................................................. 8

*Sierra Club v. FERC,*
  867 F.3d 1357 (D.C. Cir. 2017) ........................................................ 19

*Sierra Club v. United States Army Corps of Engineers,*
  645 F.3d 978 (8th Cir. 2011) ........................................................... 23

*Sierra Club v. United States Department of Agriculture,*
  716 F.3d 653 (D.C. Cir. 2013) .................................................. 7, 10, 20

*Vaquero Energy, Inc.,*
  185 IBLA 233 (2015) ...................................................................... 24

*Williams v. Keisler,*
  07-cv-503, 2007 WL 9723294 (E.D.N.Y. Oct. 30, 2007). ................... 25

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985).......................................19, 20

**Statutes**

28 U.S.C. § 1292.................................................. 1, 5–10

28 U.S.C. § 1746...........................................................25

## Other Authorities

16A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
  Federal Practice and Procedure § 3954 (5th ed. 2019) ....................12

42 Am. Jur. 2d Injunctions § 243...........................................15

## Rules

D.C. LCvR 7 ...............................................................13

Fed. R. App. P. 18 .......................................................11

Fed. R. App. P. 8 ........................................................1, 10

Fed. R. Evid. 702.........................................................25

Fed. R. of Civ. P. 7 .....................................................13

## Regulations

43 C.F.R. § 3103.4-4......................................................24

# GLOSSARY

APD        Application for Permit to Drill

Bureau     Bureau of Land Management

EIS          Environmental Impact Statement

NEPA      National Environmental Policy Act

# INTRODUCTION

A full three months after the order on appeal was entered, Appellants—two oil and gas companies—ask this Court for the extraordinary remedy of a stay pending appeal. This appeal concerns an interim injunction prohibiting the Bureau of Land Management from approving new applications for permits to drill (APDs) based on an Environmental Impact Statement (EIS) the district court found violated the National Environmental Policy Act (NEPA). The Bureau itself has not appealed. By its own terms, the interim injunction will expire once the district court issues its final remedy decision. Appellants do not here dispute that the EIS violated NEPA but nonetheless desire that the Bureau continue issuing them new drilling permits based on that deficient EIS.

The stay motion should be denied and the appeal dismissed. First, this Court lacks jurisdiction under 28 U.S.C. § 1292(a)(1) because the interim injunction was not directed at Appellants, and the Bureau itself has not appealed. Second, Appellants did not file a stay motion in the district court first, as required by Federal Rule of Appellate Procedure 8. Third, Appellants satisfy none of the four factors required for a stay.

Their appeal is not likely to succeed because this Court lacks jurisdiction and their arguments for reversal fall flat. Appellants' three-month delay in filing this motion belies any claim of irreparable harm, particularly as the injunction will expire imminently—as soon as the district court issues a ruling on the remedy briefing completed last month. The balance of equities and public interest also disfavor Appellants, because a stay would subvert NEPA and risk irreparable environmental harm. Accordingly, this Court should dismiss this appeal for lack of jurisdiction and deny the stay motion.

## BACKGROUND

This case concerns the Converse County Oil and Gas Development Project in eastern Wyoming. Shortly after issuing the EIS and Record of Decision for the Project, the Bureau of Land Management began approving APDs for the Project in reliance on these documents. Two conservation groups—Powder River Basin Resource Council and Western Watersheds Project ("Plaintiffs")—brought suit on September 7, 2022, arguing that the EIS, Record of Decision, and subsequent APD approvals for the Project violated NEPA, the Federal Land Policy and Management Act, and the Administrative Procedure Act, among other

laws. The State of Wyoming and Petroleum Association of Wyoming intervened, along with three energy companies—Anschutz Exploration Corporation, Devon Energy Production Company, L.P., and Continental Resources, Inc.

The parties filed cross-motions for summary judgment. On September 13, 2024, the district court issued a memorandum opinion granting summary judgment to Plaintiffs on their claim that the Converse County Project EIS violated NEPA in failing to adequately consider the Project's impacts on groundwater supplies. ECF No. 130.[1] The district court declined to reach Plaintiffs' remaining claims after finding the EIS invalid on this ground. *Id.*; *see also* Minute Order of October 7, 20204.

The memorandum opinion deferred a ruling on "whether to vacate the Project approval pending remand" and granted Defendants' and Intervenors' requests for supplemental remedies briefing. *Id.* at 16–17. To preserve the status quo during remedy briefing, the district court "enjoin[ed] further APD approvals based on the deficient EIS until the

_____

[1] References to documents filed in the district court are cited as "ECF #" and use the ECF pagination.

court rules on remedy." *Id.* at 17. A separate order granting the same relief immediately followed. ECF No. 131 at 1 ("Further APD approvals based on the deficient EIS are hereby ENJOINED pending further order of the court.").

On October 25, 2024, Plaintiffs filed their supplemental remedies brief with the district court. ECF 135. That brief only requested vacatur of the EIS and Record of Decision and did not seek injunctive relief. *Id.* On November 8, 2024, Appellants filed their supplemental remedies brief with the district court. ECF 138. That brief asked the district court to remand without vacating the EIS and Record of Decision, refrain from entering any injunctive relief, and "lift" the existing injunction to "allow development to continue pending remand." *Id.* at 31. No appeal had yet been filed, no request was made for a stay pending appeal, and Intervenors did not brief the four-factor test governing stays pending appeal. *Id.* at 31–32. On November 15, 2024, Plaintiffs filed a reply brief on remedies again seeking only vacatur. ECF 142.

Appellants waited until the end of their 60-day appeal deadline—November 12, 2024—to file a notice of appeal. ECF No. 140. They only appeal from the portions of the district court's September 13 order and

memorandum decision temporarily enjoining BLM from approving further APDs based on the deficient EIS, pending a final remedy ruling. *Id.* at 2. No other parties have appealed.

Remedies briefing concluded five weeks ago, on November 15, 2024. The Court has not yet issued a decision on the appropriate final remedy or entered final judgment in the case.

## ARGUMENT

### I.    The Court Should Dismiss This Appeal for Lack of Jurisdiction.

Appellants bring this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1),[2] which allows for interlocutory appeals of district court orders "granting, continuing, modifying, refusing or dissolving injunctions." Section 1292(a)(1) is an exception to the general rule limiting this Court's jurisdiction to only the final decisions of district courts. *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258,

---

[2] Appellants' brief cites 28 U.S.C. § 1291(a)(1). Stay Mot. at 2. However, there is no such provision, and the interim injunction is plainly not a "final decision" appealable under § 1291. *Riley v. Kennedy*, 553 U.S. 406, 419 (2008) ("We have long held that an order resolving liability without addressing a plaintiff's requests for relief is not final."); *see also* Stay Mot. at 6 (acknowledging this is an "interlocutory appeal").

1261 (D.C. Cir. 2012). It is to be construed "narrowly" in light of "the general congressional policy against piecemeal review." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). Three fundamental characteristics define an appealable injunction: it must be (1) "directed to a party," (2) "enforceable by contempt," and (3) "designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than preliminary fashion.'" *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986) (citation omitted).

The interim injunction Appellants seek to appeal prohibits the Bureau—and only the Bureau—from issuing "further APD approvals based on the deficient EIS until the court rules on remedy." ECF 130 at 17. The injunction is neither "directed to" nor "enforceable by contempt" against Appellants; it does not order Appellants to do anything or refrain from doing anything. *See Cooper Indus.*, 789 F.2d at 24. And the Bureau has not appealed. Because the only parties seeking review are not subject to the injunction, there is no appellate jurisdiction under § 1292(a)(1).

Case law confirms that an order granting an injunction must be appealed by those parties subject to the injunction—that is, those at

risk of being held in contempt for noncompliance with the order. For example, in *Sierra Club v. U.S. Department of Agriculture*, 716 F.3d 653 (D.C. Cir. 2013), this Court held that an injunction prohibiting the Fish and Wildlife Service from issuing "any approvals" for the disputed power plant expansion before completing an EIS did not provide a basis for the intervening power plant owner to appeal under § 1292(a)(1). *Id.* at 659. It reasoned that "[a]llowing [the] private-party appeal from the remand order, based on a limited injunction entered against the Service, would be to permit an end run around the § 1291 finality requirement and the 'general congressional policy against piecemeal review.'" *Id.* at 660 (quoting *Carson*, 450 U.S. at 84).

Likewise, in *Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022), the Eleventh Circuit held that a preliminary injunction that was binding only on the county sheriff defendant could not be appealed by the judicial defendants under § 1292(a)(1). *Id.* at 1316–18. The court rejected the judicial defendants' argument that the injunction order "has the practical effect of binding" the judicial defendants because, "by its very terms[,]" the injunction "d[id] not require the Judicial Defendants to do anything." *Id.* at 1317. Similarly, the injunction was

not "enforceable against them through contempt—as required for appellate jurisdiction," because it was only the Sheriff that could disobey the federal court's injunction. *Id.* at 1317.

This understanding of § 1292(a)(1) as a party-specific grant is reinforced by *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737 (1976). There, the Supreme Court held that the denial of an injunction is only appealable under § 1292(a)(1) by the party who was denied injunctive relief and that other parties cannot avail themselves of that grant of jurisdiction. *Id.* at 744–45. Similarly, in *Shee Atika v. Sealaska Corp.*, 39 F.3d 247 (9th Cir. 1994), the Ninth Circuit found that the denial of an injunction was only appealable by the party that requested the injunction—not others. *Id.* at 249. There, the district court denied Sealaska's request for a permanent injunction against Shee Atika. *Id.* at 248. Sealaska appealed and Shee Atika cross-appealed under § 1292(a)(1). *Id.* The Ninth Circuit held that although the order being appealed was undoubtedly one that "specifically denied . . . an injunction," Shee Atika's cross-appeal was not proper under § 1292(a)(1) because it did not deny Shee Atika itself an injunction. *Id.* at 249. Although *Liberty Mutual* and *Shee Atika* involved the denial of an

injunction, their logic is applicable here: just because an order is appealable by *some* party under § 1292(a)(1), it does not follow that it may be appealed by *any* party.

These cases all support the conclusion that § 1292(a)(1) is a party-specific grant of appellate jurisdiction: only those bound by an injunction or denied injunctive relief may appeal under § 1292(a)(1). Any broader reading would contravene the principle that § 1292(a)(1) should be construed "narrowly" in light of "the general congressional policy against piecemeal review." *Carson*, 450 U.S. at 84.

That dooms Appellants' appeal. Again, no part of the district court's interim injunction is directed at Appellants. Appellants may still submit APDs to the Bureau and continue developing their already-approved APDs. Although the decision may have practical consequences for Appellants, it does not force them to take or refrain from action under penalty of contempt. Thus, the contempt-related concerns underlying § 1292(a)(1) are simply absent. Practical consequences alone, without the threat of contempt, are insufficient to confer jurisdiction under § 1292(a)(1). *Cobell v. Kempthorne*, 455 F.3d 317, 321 (D.C. Cir. 2006) (to have "the practical effect of granting or denying an

injunction" an order must be "enforceable by contempt" in addition to having "serious, perhaps irreparable, consequences").[3]

In sum, because the interim injunction underlying this appeal was not "directed to" or "enforceable by contempt" against Appellants, the Court lacks jurisdiction under § 1292(a)(1).

## II. Appellants Have Not Complied With Federal Rule of Appellate Procedure 8.

This Court must dismiss Appellants' stay motion as premature because they have not sought a stay from the district court. Federal Rule of Appellate Procedure 8(a)(1)(A) provides that a "party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." A party moving for relief first in the court of appeals must "show that moving first before the agency would be impracticable" or "that, a motion having been made, the agency denied the motion or failed to afford the relief requested . . .

---

[3] "[T]he Supreme Court has instructed that 'the strong bias of § 1291 against piecemeal appeals almost never operates without some cost,'" *Sierra Club*, 716 F.3d at 658 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994)), and "although § 1291 inevitably results in some delay, 'Congress has determined that such delay must be tolerated,'" *id.* at 658 (quoting *Salazar ex rel Salazar*, 671 F.3d at 1261).

." Fed. R. App. P. 18(a)(2)(A)(i)–(ii). After all, the district court "is best and most conveniently able to exercise the nice discretion" needed to adjudicate a stay motion, for it "has considered the case on its merits, and therefore is familiar with the record." *Cumberland Tel. & Tel. Co. v. La. Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922).

Here, Appellants failed to comply with these requirements. They did not "move first in the district court" for a stay pending appeal. Nor did their motion explain why doing so would have been impracticable. This alone is grounds for denying the motion. *See Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996) (denying stay motion for failure to comply with Rule 8); *SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001) (denying stay motion because failure to move first in the district court "constitutes an omission we cannot properly ignore"); *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930–31 (6th Cir. 2002) (denying the stay motion where movant did not follow "[t]he cardinal principle of stay applications" by moving first in the district court); *Hirschfeld v. Bd. of Elections,* 984 F.2d 35, 38 (2nd Cir. 1993) (denying stay motion because there was "no explanation why the instant motion for a stay pending

appeal was made in the first instance to [the appellate court.]"); 16A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3954 (5th ed. 2019).

Appellants' inclusion of a short request in their remedies brief that the district court's remedy decision "lift" the injunction is insufficient. ECF 138 at 31. That was not a motion for a stay pending appeal. Rather, Appellants asked that the district court issue a "*remedy ruling[]*" that "lift[s] the injunction . . . to allow development to continue *pending remand.*" *Id.* at 7, 32 (emphasis added). In other words, Appellants did not make clear they sought merely to suspend the operation of the injunction pending appellate review. Confirming this, no appeal had yet been filed, their request was not styled as a motion for a stay pending appeal, and Intervenors did not mention or brief the four-factor test governing stays pending appeal. *Id.* at 31–32. Nor did Appellants present the district court with the affidavits or argument on which they base their motion for stay, so it could consider this material in the first instance.[4]

---

[4] Further confirming that this argument was not a motion for a stay pending appeal, it was not "made by motion," as required by Federal

The principle that a district court should have the first opportunity to evaluate a stay motion is particularly compelling here, for two reasons. First, Appellants argue that the district court insufficiently explained its rationale for granting the interim injunction. Allowing the district court to rule on a stay motion in the first instance would give that court an opportunity to clarify its findings as to the four equitable factors. Second, Appellants' stay motion rests on new evidence that the district court has not yet had a chance to consider. "The district court is the proper forum for presentation, testing and confrontation of the new evidence. Only upon completion of the district court's factfinding role, should this court consider any relief pending appeal." *See CWWG*, 101 F.3d at 1362; *see also Cumberland Tel. & Tel. Co.*, 260 U.S. at 219 (explaining that a district court, because of its familiarity with the record and issues, is best suited to weighing a stay motion in the first instance).

Accordingly, this Court should deny the motion for a stay.

---

Rule of Civil Procedure 7(b), or accompanied by a proposed order, as required by D.C. LCvR 7(c).

## III. APPELLANTS HAVE NOT ESTABLISHED THAT THEY ARE ENTITLED TO A STAY.

A stay pending appeal is an "extraordinary" remedy. *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam). To obtain such exceptional relief, the stay applicant must (1) make a "strong showing that [it] is likely to succeed on the merits"; (2) demonstrate that it will be "irreparably injured" before the appeal concludes; (3) show that issuing a stay will not "substantially injure the other parties interested in the proceeding"; and (4) establish that "the public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). All four factors must weigh in favor of the movant. *Id.* at 433–34. Because movants have failed to carry this heavy burden, their motion must be denied.

### A. Appellants Have Not Shown Likely Success on the Merits.

Appellants are not likely to succeed on the merits because their appeal must be dismissed for lack of jurisdiction. *See supra* pp. 5–10. Even if the Court could reach them, Appellants' arguments on the merits are also likely to fail. Their stay motion does not dispute that the Bureau's EIS violated NEPA. Rather, Appellants claim the interim

injunction was improperly granted because: (1) the district court failed to issue findings on all four injunction factors; (2) the district court did not hold a fact-finding hearing; and (3) Plaintiffs lacked standing to seek the interim injunction.

The first argument highlights why Appellants' motion is procedurally improper: had they presented this argument to the district court in the first instance in a stay motion, the district court would have had the opportunity to more fully explain its reasoning on the four equitable factors, avoiding unnecessary appeal proceedings.

The second argument fails because no fact-finding hearing was required. A court may grant a preliminary injunction on a paper record unless the record raises "genuine issues of material fact." *Cobell v. Norton*, 391 F.3d 251, 261–62 (D.C. Cir. 2004); *see also* 42 Am. Jur. 2d Injunctions § 243 ("An evidentiary hearing also is not required . . . when the disputed facts are amenable to complete resolution on a paper record."). Although Appellants opposed the request for an interim injunction in their summary judgment reply brief, they did not present evidence in support of that argument much less identify any genuine disputes of material fact they believe warranted a fact-finding hearing.

ECF 127 at 30. Appellants' stay motion also does not identify any genuine factual disputes that were material to the injunction.[5] Thus, the court did not abuse its discretion by denying the request for an evidentiary hearing.

The final argument as to standing also fails. The district court properly found that Plaintiffs, whose members live and recreate in the Project area and face recreational, aesthetic, and health harms attributable to the Project, had standing to challenge the Converse County Project EIS and Record of Decision. *See* ECF 105 at 15–16; ECF 130 at 7–10. The Project's impairment of the area's natural and scenic quality; reduction in wildlife viewing opportunities; and noise, light, and truck traffic will disrupt their daily quality of life and recreational enjoyment. *See* Declaration of Maria Katherman, ECF No. 64-4 at ¶¶ 3, 8–21; Declaration of Leland Turner, ECF No. 64-5 at ¶¶ 5, 8–18; Declaration of Shannon Anderson, ECF No. 64-3 at ¶¶ 5, 8–21;

--------

[5] The existence of some factual dispute is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

Declaration of Donal O'Toole, ECF No. 64-7 at ¶¶ 8, 11–15; Declaration of Erik Molvar, ECF No. 64-6 at ¶¶ 14–15, 18–25. Each approved APD will also increase concentrations of unhealthy air pollutants in the regional airshed, such as particulate matter ($PM_{2.5}$ and $PM_{10}$) and ozone, for which there is no safe level of exposure. *See* ECF No. 64-9 at 577–78, 582–83; *Am. Trucking Ass'ns, Inc. v. EPA*, 283 F.3d 355, 359–60 (D.C. Cir. 2002) ("ozone is, and PM may be, a non-threshold pollutant-that is, a pollutant that causes adverse health effects at any non-zero atmospheric concentration"). The interim injunction partially redressed those injuries by prohibiting the Bureau from using the deficient EIS to approve new APDs in the Project area. Thus, Plaintiffs had standing to seek the injunction.

Appellants suggest that standing was lacking because each hypothetical future APD the injunction might forestall is a "separate agency action" for which standing must be independently shown. That is obviously wrong. A hypothetical future APD is not an "agency action" until it is *approved*, and the injunction does not apply to approved

APDs.[6] In any event, the record establishes that the approval of new APDs in the Project area threatens harm to Plaintiffs' members that live in, visit, recreate, and travel across the Project area. ECF 105 at 15–16; *see also* ECF Nos. 64-3 to 64-7 (member declarations).

To be sure, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). However, Appellants do not explain how the injunction could have been narrowed while offering Plaintiffs adequate relief. They also waived any narrow-tailoring argument by failing to present it to the district court. *See* ECF No. 127 at 30.

Appellants redressability argument also fails. The record makes clear that BLM could reduce groundwater impacts, such as by requiring

---

[6] Appellants misrepresent that the district court "conclude[ed] Plaintiffs lacked standing to obtain a preliminary injunction against APDs." Stay Mot. at 14. That is flat wrong. The district court concluded that Plaintiffs *had* standing to seek a preliminary injunction prohibiting BLM from approving future APDs in the Project area. *See* ECF 105 at 15–16, 18. It found only that Plaintiffs' complaint lacked sufficiently particularized standing allegations as to each of the existing APD approvals, so dismissed those actions from the case. *Id.* at 12–15. Plaintiffs dispute that ruling, but it has no bearing on the injunction here, which did not reach existing APDs.

operators to use recycled water to reduce groundwater demand. *See* ECF No. 142 at 5–8 (refuting argument that BLM has no control over Project groundwater use). That suffices to establish redressability. *See Narragansett Indian Tribal Historic Pres. Office v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020) (redressability satisfied so long as "correcting the alleged procedural violation *could* still change the substantive outcome in [plaintiff's] favor"). Even if Appellants were right that BLM lacked the ability to address groundwater impacts, Plaintiffs' members claim aesthetic and recreational injuries not based on groundwater drawdowns. *Sierra Club v. FERC*, 867 F.3d 1357, 1366 (D.C. Cir. 2017) (deficiencies alleged in an EIS "need not be directly tied to the members' specific injuries").

### B. Appellants Have Not Shown They Are Likely to Suffer Irreparable Harm Absent a Stay.

Irreparable harm is a "critical" prong of the test for a stay. *Nken*, 556 U.S. at 434. "This [C]ourt has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The party seeking the stay must show injury that is "both certain and great," and "it must be actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

Appellants have not shown that a stay is necessary to prevent "certain" and "great" irreparable harm. *Id.* It is not clear that the interim injunction results in *any* harm. Absent that injunction, NEPA itself would still prohibit BLM from continuing to approve permits based on the deficient EIS. As the district court here explained, "any new APDs based on deficient documents would be legally invalid." ECF 130 at 17 (cleaned up); *cf. Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d at 659–60 (enjoining new project approvals pending completion of new EIS "serve[d] no function" because this was required even absent the injunction); *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 763 (8th Cir. 2009) (finding no irreparable harm from injunction suspending project construction "pending completion of an EIS" because that was the natural result of the NEPA ruling).

The Court should also view Appellants' assertions of harm with considerable skepticism given that they waited 91 days to file the instant stay application while also failing to seek expedited review of this appeal. That lack of urgency belies any claim that waiting mere months for the district court's remedies decision will cause them serious irreparable harm. *See, e.g., Hanson v. District of Columbia*, 120 F.4th

223, 245–46 (D.C. Cir. 2024) (holding that a lack of "urgency in obtaining relief," such as an unexplained failure to seek expedited appellate review, "undercuts claims of irreparable harm"); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding that a 44-day delay in seeking relief undermined claim of irreparable harm); *CWWG*, 101 F.3d at 1361–62 (denying stay motion because weeks-long delay in seeking relief belied their claim of "extreme urgency").

A careful review of Appellants' claimed harms also shows they are vastly overstated. The injunction is time-limited and will expire on its own terms once the district court issues its final remedy ruling. Accordingly, the relevant period for assessing irreparable harm is the time between a possible stay issuance and district court's remedies ruling. Yet Intervenors' assertions of harm presume a stay would avoid a 12- to 18-month permitting delay. Stay Mot. at 19. Such a delay is highly improbable where the district court ruled on summary judgment in under three months and five weeks have already elapsed since remedies briefing concluded.

Appellants provide no evidence of harm from a far shorter delay. However, even crediting the assumption of a 12- to 18-month delay,

their claimed harms are overblown and speculative. The companies'

profits from these drilling projects will not be lost but merely delayed.

Appellants claim that delayed profits constitute harm, due to the time

value of money. Stay Mot. at 23. However, "[a]ny increased costs from

delay in drilling while an EIS is being prepared … is not sufficient to

establish prejudice, because NEPA contemplates just such a delay."

*Park Cnty. Res. Council v. U.S. Dep't of Agric.*, 817 F.2d 609, 618 (10th

Cir. 1987), *overruled on other grounds by Vill. of Los Ranchos De

Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). Additionally,

their time-value calculations are inflated as the declarants only account

for a delay in expected *revenues* without accounting for the delay in

project *costs*. *See* Decl. of Ryan Baker ¶ 14; Decl. of Rebecca A. Byram &

Brian E. Carlson ¶ 18. The actual financial impact of delaying a project

must be calculated based on the net difference in the company's cash

flows—both revenues and costs—because delaying costs has a time-

value *benefit*. In short, Appellants' largest supposed "irreparable harm"

is grossly overstated.

Appellants also misleadingly claim they "could lose" various

expenses made in anticipation of securing new drilling permits, but the

declarations do not say so. *Compare* Stay Mot. at 19 (claiming Devon "could also lose $35,905,000 in costs") *with* Byram & Carlson Decl. ¶ 13.b (claiming only that delay "could strand" investments in processing facility); Byram & Carlson Decl. ¶ 13.c (not claiming pre-paid costs would be lost). These investments were also made without any guarantee of future APD approvals and thus at the companies' own risk. *See Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) (entities that "jump[] the gun" by "entering into contractual obligations" in anticipation of agency approvals "are largely responsible for their own harm."), *abrogated on other grounds by Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016) (cleaned up); *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011) (finding that serious monetary costs of halting activities begun before obtaining necessary permit were "largely self inflicted").

Appellants also claim they risk losing oil and gas leases if they are not drilling at the end of the ten-year lease term. Stay Mot. at 19–22. This is exceedingly unlikely, because BLM is obligated to suspend the running of a lease term if its own actions (here, a NEPA violation) prevent a leaseholder from commencing drilling operations. *See*

*Vaquero Energy, Inc.*, 185 IBLA 233, 236 (2015),

https://www.oha.doi.gov/IBLA/Ibladecisions/185IBLA/185IBLA233.pdf;

43 C.F.R. § 3103.4-4(b).

For all these reasons, Appellants have not shown that a stay is

necessary to avoid irreparable harm.

**C.      The Balance of Equities and Public Interest Disfavor
the Stay.**

The balance of equities and public interest both weigh strongly

against a stay. *See Nken*, 556 U.S. at 434. If environmental injury is

likely, "the balance of harms will usually favor the issuance of an

injunction to protect the environment." *See Amoco Prod. Co. v. Vill. of

Gambell,* 480 U.S. 531, 545 (1987). Here, allowing further APDs to be

approved will subject Plaintiffs' members and the public to

environmental harm from ground clearing, construction, drilling, and

operation of any approved APDs. *See* ECF No. 91 at 33–49; ECF No. 64-

1 at 53–57; ECF Nos. 64-3 to 64-7. Such impacts are not limited to

"traffic and dust," as Intervenors suggest, Stay Mot. at 20, but rather

include air pollution, ECF No. 64-9 at 577–89, wildlife losses, *id.* 670,

818–19, 823, 835–37, 846, 853, 870, 873–76, 881, 970, scenic

degradation, *id.* at 670–71, and risk of water depletion and

contamination, *id.* at 790–95. *See also* Declaration of Maria Katherman, ECF No. 64-4 at ¶¶ 10–21; Declaration of Leland Turner, ECF No. 64-5 at ¶¶ 8–18; Declaration of Shannon Anderson, ECF No. 64-3 at ¶¶ 18–21; Declaration of Donal O'Toole, ECF No. 64-7 at ¶¶ 8, 11–15; Declaration of Erik Molvar, ECF No. 64-6 at ¶¶ 14–15, 20–25. Avoiding such environmental harms is in the public interest. *See Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 323–27 (D.C. Cir. 1987).[7]

The public also has a strong interest in ensuring that federal agency actions comply with the requirements of NEPA. "The NEPA duty is more than a technicality; it is an extremely important statutory requirement to serve the public and the agency *before* major federal

---

[7] Appellants lack any basis for their allegation that "Plaintiffs did not suffer substantial injury from the Project moving forward up to this point." Stay Mot. at 21. They also lack any evidence to support their claim that groundwater impacts are not likely. Their only support is a declaration that cannot be considered because it is: (a) unaccompanied by the expert report needed to establish that it is "based on reliable principles and methods," Fed. R. Evid. 702; and (b) not dated, as required by 28 U.S.C. § 1746. *See Williams v. Keisler*, 07-cv-503, 2007 WL 9723294, at * 4 (E.D.N.Y. Oct. 30, 2007). The declaration also repeats the error in BLM's groundwater model—by using a specific storage value well outside the range (.000000078 to .00000012) listed in BLM's source report. *See* ECF No. 130 at 14. In any event, groundwater depletion is just one of many irreparable harms the Project threatens. *See supra* pp 24–25.

actions occur." *Found. on Econ. Trends v. Heckler*, 756 F.2d 143, 157 (D.C. Cir. 1985). Allowing BLM to continue approving new permits based on a deficient EIS, perpetuating the NEPA violation, is not in the public interest. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."); *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d at 323–26 (public interest favors "protect[ing] against further illegal action pending resolution of the merits").

Appellants claim that delaying development is not in the public interest because the public will benefit from the royalties, taxes, and jobs from these drilling projects. Stay Mot. at 22–23. However, there is simply no evidence that delaying new APD approvals will meaningfully reduce any future economic benefit that may result from the Project.

In sum, because staying the interim injunction will harm both Plaintiffs and the public interest, these final factors disfavor a stay.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal for lack of jurisdiction and deny Appellants motion for a stay pending appeal.

DATED: December 20, 2024     Respectfully submitted,

                            */s/ Sarah K. Stellberg*
                            SARAH STELLBERG
                            HANNAH GOLDBLATT
                            ADVOCATES FOR THE WEST
                            P.O. Box 1612
                            Boise, ID 83701
                            (208) 342-7024

                            *Counsel for Plaintiffs-Appellees*
                            *Powder River Basin Resource Council*
                            *and Western Watersheds Project*

## CERTIFICATE OF COMPLIANCE

This brief complies with Federal Rule of Appellate Procedure 27(d)(2)(a) and Circuit Rule 27(c) because it contains 5,394 words, excluding the exempted parts.

This brief also complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in 14-point font using a proportionally spaced typeface using Microsoft Word Version 16.91.

s/ Sarah Stellberg

SARAH STELLBERG

DECEMBER 20, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of December, 2024, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Sarah Stellberg
SARAH STELLBERG

DECEMBER 20, 2024